IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SCOTT COATES, #A1068673, <br><br> Plaintiff, <br><br> v. <br><br> SHANNON CLUNEY, *et al.*, <br><br> Defendants. | Civ. No. 23-00122 JMS-WRP <br><br> ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND |

## ORDER DISMISSING PRISONER CIVIL RIGHTS COMPLAINT, ECF NO. 1, WITH LEAVE TO AMEND

Before the court is pro se Plaintiff Scott Coates' ("Coates") Prisoner Civil Rights Complaint ("Complaint") brought pursuant to 42 U.S.C. § 1983.[1] ECF No. 1. In the Complaint, Coates alleges that he was denied adequate medical care (Counts I and II) and that his safety was threatened (Count III) at the Halawa Correctional Facility ("HCF"), a state prison.[2] After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court

---

[1] Coates is currently incarcerated at the Halawa Correctional Facility. *See* ECF No. 1 at PageID.1; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A1068673"; and select "Search") (last visited Apr. 14, 2023).

[2] Coates names Defendants Shannon Cluney, Lyle Antonio, Scott Harrington, Mandy Fedlt, Caroline Mee, and Tommy Johnson in their individual and official capacities. *See* ECF No. 1 at PageID.1–PageID.2.

DISMISSES the Complaint with leave granted to amend. If Coates wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **May 15, 2023**. In the alternative, Coates may inform the court in writing on or before **May 15, 2023**, that he would like to dismiss voluntarily this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a "strike" under 28 U.S.C. § 1915(g).

## I. STATUTORY SCREENING

The court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  BACKGROUND[3]

On December 3, 2018, Coates informed medical staff at the HCF that he was previously diagnosed with pterygium on his right eye.[4] ECF No. 1 at PageID.5. Coates was then given "artificial tears" to treat the condition. *Id.*

---

[3] Coates' factual allegations are accepted as true for purposes of screening. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] Pterygium is "a raised, fleshy, triangular-shaped growth" on the eye. Cleveland Clinic, Pterygium (Surfer's Eye), https://my.clevelandclinic.org/health/diseases/22497-pterygium-surfers-eye (last visited Apr. 14, 2023). The condition's main cause is long-term exposure to UV light. *Id.* An affected eye "may be red, swollen and irritated in mild cases. If pterygium grows, . . . vision may be blocked or blurred. Treatments include symptom-relieving eye drops and ointment to surgery if . . . vision is affected." *Id.*

According to Coates, more than three years passed before he saw an ophthalmologist. *Id.* During this time, the pterygium developed into ocular cicatricial pemphigoid ("OCP").[5] *Id.* Dr. Treshe (who is not named as a defendant) diagnosed the OCP and referred Coates to a doctor at Straub Medical Center. *Id.* The doctor at Straub referred Coates to EyeSight Hawaii, which then referred Coates to a rheumatologist in May 2022. *Id.*

In January 2023, Coates was scheduled for a follow-up appointment at EyeSight Hawaii. *Id.* at PageID.6. According to Coates, Moani and Glidewell (who are not named as defendants) cancelled his appointment. *Id.* At some point, Glidewell ordered an injection of methotrexate for Coates but he "rejected it."[6] *Id.* at PageID.9. A week later, Coates refused an oral dose of the same drug.[7] *Id.* Glidewell then told Coates that she would inform the Hawaii Paroling Authority

---

[5] OCP is "a form of mucous membrane pemphigoid (a group of rare, chronic autoimmune disorders) that affects the eyes." *See* Autoimmune Association, What is Ocular cicatricial pemphigoid, https://autoimmune.org/disease-information/ocular-cicatricial-pemphigoid/ (last visited Apr. 14, 2023). "In the early stages, people with OCP generally experience chronic or relapsing conjunctivitis that is often characterized by tearing, irritation, burning, and/or mucus drainage. If left untreated, OCP can progress to severe conjunctiva scarring and vision loss." *Id.*

[6] Methotrexate is used to treat a variety of conditions, including autoimmune diseases. *See* National Institutes of Health, Methotrexate, https://medlineplus.gov/druginfo/meds/a682019.html#:~:text=Methotrexate%20is%20in%20a%20class,activity%20of%20the%20immune%20system (last visited Apr. 14, 2023).

[7] It is unclear exactly when these events allegedly occurred. Although Coates states that he rejected the oral dose a week after the injection, he also states that he refused the injection on November 8, 2023, and the oral dose of medication on November 14, 2021. ECF No. 1 at PageID.9.

that Coates was refusing treatment. *Id.* Coates denies that he was refusing treatment. *Id.*

At various times while he was incarcerated at the HCF, Coates alleges that prison officials threatened his safety by housing him with inmates infected with COVID-19. *Id.* at PageID.7. Coates further alleges that prison officials refused to provide him with a mask in November 2022. *Id.* Soon thereafter, Coates contracted COVID-19. *Id.* This was the third time that he had contracted the virus at the HCF. *Id.*

Coates signed the Complaint on February 27, 2023. *Id.* at PageID.8. On April 7, 2023, the court granted Coates' Application to Proceed In Forma Pauperis by a Prisoner. ECF Nos. 4, 5. In the Complaint, Coates seeks injunctive relief and unspecified damages. ECF No. 1 at PageID.8.

### III.  DISCUSSION

**A.     Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged

5

violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable to suit under 42 U.S.C. § 1983. "First, plaintiffs may seek damages against a state official in his personal capacity." *Cornel*, 37 F.4th at 531 (citing *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016)). "Second, state officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Id*. (citation omitted). This second situation applies "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id*. (internal quotation marks and citation omitted).

**B.    Causation**

Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." (citation omitted)). "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Id*. (citation omitted).

"The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions

are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). A person deprives another of a constitutional right, within the meaning of 42 U.S.C. § 1983, "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Here, although Coates names six individuals in the Complaint's caption, he fails to link any of them to an alleged constitutional violation. Indeed, Coates does not refer to any Defendant in any of the Complaint's three Counts. *See* ECF No. 1 at PageID.5–PageID.11. Because Coates has not plausibly alleged that any Defendant caused a constitutional violation, the Complaint will be DISMISSED with leave granted to amend. *See Rodriguez v. Foss*, 2019 WL 6341567, at *2 (N.D. Cal. Nov. 27, 2019) ("The complaint will be dismissed with leave to amend because plaintiff has failed to link any of the defendants to the constitutional violation.").

If Coates decides to file an amended pleading, he should name, for each instance of an alleged constitutional violation, each person who violated his constitutional rights, describe what each person did to violate his rights, and state where and when the violation occurred. Coates must be careful to allege facts

7

showing the basis for liability for each individual defendant. In other words, Coates "should identify each involved defendant by name and link each of them to his claim by explaining what each defendant did or failed to do that caused a violation of his constitutional rights." *Id.* To assist Coates in preparing any amended pleading, the court provides the following procedural and legal standards.

**C.    Improper Joinder**

A party asserting a claim may join, as independent or alternative claims, as many claims as it has against an opposing party. Fed. R. Civ. P. 18. "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties." *Weeks v. Espinda*, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met: (1) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017). Unrelated claims involving different defendants belong in different suits. *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4 (D. Haw. Jan. 13, 2014).

8

Here, in Count III, Coates alleges that his safety was threatened when he was housed with inmates who had COVID-19, and he was denied a mask. *See* ECF No. 1 at PageID.7.  It is not apparent why Count III should be joined in the same suit with Counts I and II, however, in which Coates alleges that he was denied adequate medical care for a condition in his right eye.  *See* ECF No. 1 at PageID.5–PageID.6.  The fact that both sets of claims are based on events at the same correctional facility, without more, is not enough to join them in the same action.  *See Woods v. Curry*, 2013 WL 12222362, at *1 (N.D. Cal. May 2, 2013) (concluding that prisoner improperly joined claims "based on a wide variety of unrelated events that occurred at his prison").

If Coates decides to file an amended pleading, any claim asserted therein must be permitted by either Rule 18 or Rule 20.  Coates may state a single claim against a single defendant.  Pursuant to Rule 18, Coates may then add any additional claims to his action that are against the same defendant.  Fed. R. Civ. P. 18.  Coates may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim.  Fed. R. Civ. P. 20(a)(2).

Coates may not pursue a combination of unrelated claims in a single suit.  *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate

9

actions."). Coates may, however, raise any unrelated claims in a separate action or actions. *See D'Agirbaud v. Kam*, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing complaint for misjoinder allowed plaintiff "to decide which related claims he will pursue in this action, and which claims he will bring in a new action"). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

**D.     Statute of Limitations**

Section 1983 does not contain its own statute of limitations, therefore, "[a]ctions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions." *Knox v. Davis*, 260 F.3d 1009, 1012–13 (9th Cir. 2001) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985)). In general, the statute of limitations for personal injury actions in Hawaii is two years. *See* Haw. Rev. Stat. § 657-7; *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). Under federal law, which governs the accrual of a claim under 42 U.S.C. § 1983, a cause of action generally accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015).

Coates signed the Complaint on February 27, 2023. *See* ECF No. 1 at PageID.8. If Coates gave the Complaint to prison officials for mailing on the same

day, the two-year limitations period reaches back to February 27, 2021. Coates should keep this two-year period in mind if he files an amended pleading. Currently, the exact timing of the various events described in the Complaint is unclear.

E.    **Supervisory Defendants in their Individual Capacities**

There is no *respondeat superior* liability under 42 U.S.C. § 1983. *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

"A supervisory official may be held liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018) (internal quotation marks and citations omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018) (internal quotation marks and citations omitted). "Thus, a supervisor may be liable

in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks and citation omitted).  A "claim that a supervisory official knew of unconstitutional conditions and culpable actions of his subordinates but failed to act amounts to acquiescence in the unconstitutional conduct of his subordinates and is sufficient to state a claim of supervisory liability." *Keates*, 883 F.3d at 1243 (internal quotation marks and citation omitted).

Here, Coates names as Defendants various supervisory officials, including the warden and medical supervisor at the HCF, and the director of the Department of Public Safety ("DPS").  *See* ECF No. 1 at PageID.2.  If Coates wants to pursue a claim against a supervisory official, he must identify that official's personal involvement in a constitutional violation or a sufficient causal connection between the supervisor's conduct and a constitutional violation.  Coates cannot state a claim against the warden, a medical supervisor, the director of the DPS, or any other supervisory official solely because of their supervisory positions.  *See DePaepe v. White*, 2020 WL 3472907, at *4 (D. Haw. June 24,

2020) ("Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of vicarious liability[.]").

**F.     Eighth Amendment**

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments." U.S. Const. amend. VIII; *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Id.* (citations omitted).

   **1.     *Denial of Adequate Medical Care***

Coates alleges in Counts I and II that he was denied adequate medical care. *See* ECF No. 1 at PageID.5–PageID.6, PageID.9–PageID.10.

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 785 (internal quotation marks and citations omitted). "Serious medical needs can relate to physical, dental and mental health." *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original). This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted). "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

Even assuming Coates' allegations regarding his pterygium and OCP identify a serious medical need, *see Coleman v. CDCR*, 2011 WL 2619569, at *3 (E.D. Cal. July 1, 2011) ("Plaintiff's allegations concerning his pterygium are sufficient to support a claim that he had a serious medical need[.]"), Coates has not

14

plausibly alleged that a named defendant consciously disregarded an excessive risk to his safety. For example, Coates does not say when he alerted any named defendant to his need for medical care, what he said in doing so, or how they responded. Without more, Coates' medical care claims cannot proceed. *See Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) ("[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim.").

    2.    *Threat to Safety*

Coates alleges in Count III that his safety was threatened because he was housed with inmates who had tested positive for COVID-19, and he was not given a face mask. ECF No. 1 at PageID.7.

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (internal quotation marks and citations omitted). A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation alleged must be objectively, sufficiently serious." *Id.* at 834 (citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and footnote omitted). Second, the plaintiff must show

deliberate indifference — that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Even if COVID-19 posed a substantial risk of serious harm, *see Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."), Coates has not plausibly alleged that a named defendant acted with deliberate indifference to his safety. Coates does not allege that he complained to any prison official about being housed with inmates who had contracted the virus, what he said to the prison official, or how that prison official responded. Similarly, Coates does not say whom he asked for a mask and what he was told in response. Thus, Coates has not stated a plausible threat-to-safety claim.

### G.   First Amendment – Free Exercise

At one point, Coates suggests that his "religious preference" was violated when an unnamed prison official suggested that he "change [his] religion" and "go on the Essenes vegetable diet." ECF No. 1 at PageID.11.

"Prisoners have First Amendment protection, but their rights under the Free Exercise Clause are necessarily limited by 'institutional objectives and by the loss of freedom concomitant with incarceration.'" *Al Saud v. Days*, 50 F.4th 705,

714 (9th Cir. 2022) (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013)). "To state a free exercise claim in the prison context: (1) the claimant's proffered belief [must be] sincerely held; and (2) the claim [must be] rooted in religious belief, not in purely secular philosophical concerns." *Id.* (internal quotation marks and citation omitted).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted). "A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* at 1031–32 (internal quotation marks and citations omitted) (ellipsis and alteration in original).

Here, Coates fails to state a colorable free exercise claim for several reasons. First, he does not identify a sincerely held religious belief. Second, Coates does not explain how requesting an "Essenes vegetable diet" conflicts with those sincerely held beliefs. Third, Coates fails to explain how requesting a dietary accommodation would substantially burden the practice of his religion. Thus, any First Amendment claim alleged by Coates currently cannot proceed.

17

## IV.  LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend.  Coates must file any amended pleading on or before **May 15, 2023**.  Coates may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint.  Claims that do not properly relate to those in the Complaint are subject to dismissal.

Coates must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928.

## V.  28 U.S.C. § 1915(g)

If Coates fails to file an amended complaint or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28

U.S.C. § 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Coates must file any amended pleading on or before **May 15, 2023**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC DISMISSAL of this suit without further notice, and Coates may incur a strike under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Coates may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) The Clerk is DIRECTED to send Coates a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 14, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Coates v. Cluney, et al.*, Civ. No. 23-00122 JMS-WRP, Order Dismissing Prisoner Civil Rights Complaint, ECF No. 1, with Leave to Amend

20